UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MUSTAFA HUNDUR,<br><br>*Petitioner*,<br><br>v.<br><br>HAZAL BARUT HUNDUR,<br><br>*Respondent.* | No. 1:25-cv-01496-MSN-WBP |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Petitioner's Motion for Award of Attorneys' Fees, Necessary Expenses, and Litigation Costs Pursuant to 22 U.S.C. § 9007(b)(3) ("Motion"). ECF 138. For the reasons that follow, the Court will grant the motion in part.

## I. BACKGROUND

On July 25, 2025, Petitioner Mustafa Hundur ("Petitioner"), through counsel, filed a Verified Petition for the Return of the Minor Child and initiated these proceedings against Hazal Barut Hundur ("Respondent") under the Hague Convention of the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10494–01 (Mar. 26, 1986) (the "Hague Convention"), and its implementing statute, the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 9001–9011, seeking the return of their minor son ("A.H.") to Turkey from the United States ("Petition"). ECF 3. The Petition was originally filed in the Northern District of Georgia. On September 4, 2025, this case was transferred to the Eastern District of Virginia due to Respondent's testimony that, at the time the Petition was filed, A.H. was located in Virginia near the Washington, D.C. metropolitan area.

ECF 31. After the case was transferred, Petitioner proceeded as a *pro se* litigant. ECF 38. The Court granted Petitioner's Petition on April 14, 2026, and ordered A.H.'s prompt return to Turkey. ECF 132, 133. Pursuant to the Order, Petitioner timely filed this Motion on May 4, 2026. ECF 138. Respondent filed an Opposition on June 2, 2026. ECF 132. Petitioner replied on June 8, 2026. ECF 144. Petitioner filed an additional memorandum on July 13, 2026 and two additional memoranda on October 9, 2026. ECF 145, 146, 147.[1] Now that this matter has been fully briefed and is ripe for disposition, the Court dispenses with oral argument as it would not aid in the decisional process.

## II. ANALYSIS

ICARA's costs and fees provision provides that:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). Thus, the statute "impos[es] 'a mandatory obligation' on courts to award necessary expenses to a successful petitioner, except when the respondent demonstrates that an award would be clearly inappropriate." *Rath v. Marcoski*, 898 F.3d 1306, 1310 (11th Cir. 2018) (quoting *Salazar v. Maimon*, 750 F.3d 514, 519 (5th Cir. 2014)); *see also Sundberg v. Bailey*, 765 F. App'x 910, 914 (4th Cir. 2019) (explaining that ICARA establishes a "rebuttable presumption in favor of a fee award," overcome when necessary expenses are "clearly inappropriate").

An award of fees and costs under the Hague Convention "serves two purposes: (1) 'to restore the applicant to the financial position he or she would have been in had there been no

[1] Per Local Rule 7(f)(1), other than a motion, response, and a reply, "No further briefs or written communications may be filed without first obtaining leave of Court." Petitioner did not request leave of Court to file his additional memoranda. As such, the Court did not consider these filings in entering this order.

removal or retention,' and (2) 'to deter such removal or retention.'" *Wertz v. Wertz*, No.: 7:18cv00061, 2018 WL 1575830, at *17 (W.D. Va. Mar. 30, 2018) (quoting Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986)). "A party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and his or her rates." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Petitioner requests $70,467.90 in attorneys' fees and related litigation expenses incurred by counsel in the Northern District of Georgia Court, and a further $9,201.74 in personal litigation expenses, including travel, lodging, transportation, and hearing attendance expenses. The Court first reviews whether Petitioner has submitted "necessary expenses" and then addresses whether Respondent has shown that any order would be "clearly inappropriate."

**A. "Necessary Expenses"**

The Court first determines how much to award Petitioner in ordering "respondent to pay necessary expenses incurred by or on behalf of the petitioner." 22 U.S.C. § 9007(b)(3). Necessary expenses "includ[e] court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child." *Id.* Courts have held that the "necessary expenses" must be "related to the return of the child" to shift the petitioner's fees and costs to the respondent under § 9007(b)(3). *Guaragno v. Guaragno*, No. 7:09-cv-00187, 2010 WL 5564628, at *1 (N.D. Tex. Oct. 19, 2010) (cleaned up); *see also In re SKM*, No. 13 Civ. 4167, 2014 WL 13114197, at *4 (S.D.N.Y. Apr. 16, 2014) ("The burden is on the Petitioner to establish the necessity of expenses and legal fees incurred relating to the return of the children"); *Aldinger v. Segler*, 157 F. App'x 317, 318 (1st Cir. 2005) ("[T]he court has the obligation to determine whether the requested fees and costs were 'necessary' to secure the children's return.").

**1. Attorneys' Fees**

Petitioner seeks $70,467.90 in "attorneys' fees and case litigation expenses" incurred by his counsel while this matter was in the Northern District of Georgia. In support of this request, Petitioner submits invoices detailing the services provided by Petitioner's former counsel and his payment for those services. ECF 138-1

Generally, "[e]ven if a federal statute provides attorney's fees to a prevailing litigant," a *pro se* litigant is not entitled to attorneys' fees. *Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991); *Harman v. Unisys Corp.*, 746 F. Supp. 2d 755, 764 (E.D. Va. 2010). However, these cases have arisen in the context where a *pro se* litigant is seeking fees for their own work, under the premise that a *pro se* litigant has not incurred attorneys' fees and therefore is not entitled to such fees. *See, e.g.*, *Kashif v. Amerigroup Corp.*, No. 2:10-cv-00239-MSD-FBS, 2010 WL 11530358, at *2 (E.D. Va. Nov. 30, 2010); *Turpin v. Wellpoint Companies, Inc.*, No. 3:10-CV-850-HEH, 2011 WL 1086482, at *2 (E.D. Va. Mar. 23, 2011); *Zettervall v. Zachary Piper Sols., LLC*, No. 1:23-CV-206-LMB-WEF, 2023 WL 3568089, at *1 n.1 (E.D. Va. May 5, 2023); *Davison v. Loudoun Cnty. Bd. of Supervisors*, No. 1:16-cv-00932-JCC-IDD, 2017 WL 1929406, at *3 (E.D. Va. May 10, 2017), *aff'd sub nom. Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), *as amended* (Jan. 9, 2019); *Farooq v. AmeriGas Propane, Inc.*, No. 1:13-CV-711-LMB-IDD, 2013 WL 3894165, at *4 n.6 (E.D. Va. July 25, 2013).

Petitioner's request here is different. ICARA explicitly recognizes that "Petitioners may be required to bear the costs of legal counsel or advisors" and that these fees "shall be borne by the Petitioner." 22 U.S.C.A. § 9007(b). The Court construes Petitioner's request not as a request for attorneys' fees, but for an award for legal fees incurred by his retention of his former counsel for work in the case, prior to the action being transferred to this district. Respondent does not contest

whether Petitioner is entitled to recover these fees, so the Court considers this point conceded. ECF 3 ¶ 5. Therefore, the Court will assume without deciding that Petitioner is entitled to an award for the costs of legal counsel borne by his efforts to return A.H. to Turkey.

Determining reasonable attorneys' fees "is a matter of discretion with the court." *Neves v. Neves*, 637 F. Supp. 2d 322, 339 (W.D.N.C. 2009) (citing *Robinson v. Equifax Info. Services*, 560 F.3d 235, 243 (4th Cir. 2009)). The Court will apply the lodestar method to determine the amount of reasonable attorneys' fees to award. *See id.* (collecting cases); *Chambers v. Russell*, No. 1:20-cv-00498-AJT-WEF, 2021 WL 1581074, at *2-6 (M.D.N.C. Apr. 22, 2021). Under the lodestar method, the court multiplies the number of hours reasonably expended by a reasonable rate to calculate the appropriate award amount, *Chambers*, 2021 WL 1581074, at *2, after considering the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008).

The party seeking an award of attorneys' fees must submit adequate evidence detailing the hours worked and the rates claimed. *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* In applying the lodestar method, the court, in its discretion, may reduce the award requested by Petitioner. *Trudrung v. Trudrung*, No. 1:10-CV-73, 2010 WL 2867593, at *2 (M.D.N.C. July 21, 2010) (citing *Hensley*, 461 U.S. at 433).

Petitioner provides the invoices he paid to The Manley Firm, *see generally* ECF 138-1. These invoices include time entries for the work conducted by various members of the firm. *Id.* The invoices, however, do not provide the Court with sufficient information to determine a reasonable fee award. For example, the invoices do not identify staff by their roles and level of experience, which does not give the Court sufficient information as to whether the hourly rates charged were reasonable. *See* generally ECF 138-1. Additionally, many of the entries in the invoices include missing or redacted information, *see id.* at 2-3 (Invoice No. 17765 entries 1, 2, 6); *id.* at 11 (Invoice No. 16983 entries 13-15, 17-20); *id* at 17-28 Invoice No. 15973 entries 17, 21, 37, 38, 44, 47, 52, 53, 62, 63, 73, 75, 77, 79, 87, 89; *id.* at 31-42 (Invoice No. 15290, entries 7, 9, 15, 18, 19, 22, 27, 32, 34, 37, 38, 40, 44, 45, 47, 48, 50,5 54, 56, 57, 61-63, 70, 74-76); *id.* at 45-56 (Invoice No. 14480 entries, 4, 13-15, 20, 21, 25-27, 30-31, 33, 36, 39, 41, 50, 53-55, 57, 59, 62-63, 65); *id.* at 60-76 (Invoice No. 13659 entries 3, 6-8, 11-13, 18, 19, 21, 24, 26-28, 32, 36, 48, 49, 52-54, 60, 61, 62); *id.* at 80 (Invoice No. 12900 entries 1, 2), or are illegible, *see id.* at 74 (Invoice No. 13659 entries 58-59). The invoices also include fees related to counsel's retention of investigators, *see id.* at 16, 17, 21 (Invoice No. 15973 entries 5, 19, 38); *id.* at 32, 34 (Invoice No. 15290, entries 4, 25, 27); *id.* at 49 (Invoice No. 14480 entries 25, 26. While fees for an investigator may be awarded, "the fees must be supported with specific information about the time the investigator spent on the matter, his hourly rate, and his qualifications to charge such fees." *J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 678 (D.S.C. 2011). Petitioner has not included such information here.

Petitioner's invoice also contains unexplained discrepancies. Petitioner requests $70,467.90, but the invoices submitted by Petitioner reflect that he was billed $70,287.90 and paid $63,802.50. *id.* at 3. And two of the invoices 17765 and 18521 are dated from October 2025, after

the case was transferred and Petitioner notified the Court of his *pro se* status. *Compare id.* with ECF 38 (Petitioner's Notice of *Pro Se* Status).

Additionally, Petitioner has also not provided the Court with adequate information to determine whether the time and labor expended before the matter was transferred to the Eastern District of Virginia was reasonable. Counsel's representation of Petitioner was terminated at the jurisdictional stage and included a brief period of expedited discovery, in preparation for the September 3, 2025 Show Cause Hearing. Petitioner's counsel represented him prior to the case reaching the merits stage and did not contribute to the Court ultimately awarding judgment in favor of the Petitioner. Yet counsel billed Petitioner for 172 hours in "professional fees" over the course of four months. The Court finds this was not a reasonable amount of time to be spent on a case of this nature, especially given the lack of novelty and difficulty in the jurisdictional questions raised.[2] Accordingly, the Court finds that Petitioner has failed to show that the $70,467.90 incurred by Petitioner was reasonable, and, therefore, will not award attorney's fees in this case.

**2. Personal Litigation Expenses**

Petitioner also seeks reimbursement for the out-of-pocket expenses he incurred "in order to prosecute this action and comply with hearing attendance requirements." Specifically, Petitioner seeks reimbursement for (1) eight international travel from Turkey to the United States to attend hearings and to "transfer mutual child;" (2) two domestic flights between Georgia and Virginia to for "passport pick up;" (3) rental cars, and tolls, and lodging associated with those trips; (4) document translation services; and (6) the fee to obtain the court transcript for the January 26,

[2] In other Hague Convention cases that reached the merits stage, courts have granted much smaller fee awards. *See Willing v. Purtill,* No. 07–1618–AA, 2008 WL 299073, at *1 (D. Or. Jan. 31, 2008) (awarding $28,669.95 in attorneys' fees under ICARA); *Lebiedzinski v. Crane,* No. A03–0248 CV (JKS), 2005 WL 906368, at *4 (D. Alaska Apr. 13, 2005) (awarding $26,877.96 in attorneys' fees under ICARA); *Neves v. Neves*, 637 F. Supp. 2d 322, 344 (W.D.N.C. 2009) (awarding $21,649.25 in attorneys' fees under ICARA).

2026 hearing before the undersigned. ECF 138 ¶¶ 11-12; ECF 138-2. Petitioner calculates these expenses as totaling $9,201.74. ECF 138-2. Courts have awarded similar expenses. *Monterros Salguero v. Fanco Argueta*, No. 5:17-CV-125-FL, 2017 WL 4475995, at *2 (E.D.N.C. Oct. 6, 2017) (awarding fees, including for the cost of translation of documents, hearing transcript, lodging, meals, and airfare, and citing cases); *see Idkeidek v. Idkeidek*, No. 2:25-CV-02903-TLP-CGC, 2026 WL 893187, at *4 (W.D. Tenn. Apr. 1, 2026) (collecting cases). The Court finds these costs are all necessary expenses related to the return of the child and are reasonable. The Court will award $9,201.74 for Petitioner's personal litigation expenses.

**B. "Clearly Inappropriate"**

"ICARA gives courts the discretion to reduce or even eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs where such an award would be clearly inappropriate." *Id.* (internal quotation marks omitted). However, Respondent faces a substantial burden in establishing that an award is clearly inappropriate. *See Salazar*, 750 F.3d at 522 (emphasizing respondent's "statutory obligation to come forward with evidence" to establish that a fee award was clearly inappropriate). The statute does not define "clearly inappropriate," and the inquiry is "fact dependent." *Rath*, 898 F.3d at 1311. Two considerations have arisen "with some frequency" in the analysis. *Id.* The first is when "a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child." *Id.* The second is when "a respondent had a good faith belief that [his] actions in removing or retaining a child were legal or justified." *Id.*

### 1. Financial Hardship

Courts have found evidence of a respondent's limited financial resources sufficient to reduce or deny an award of attorneys' fees. *See Gomez v. Gonzalez*, No. C24-5645-KKE, 2025 WL 1666243, at *3 (W.D. Wash. June 12, 2025) (collecting cases).

Respondent contends that an award for costs would impose a significant hardship as she has "extremely limited sources of income." ECF 142 at 8. In support of this argument, Respondent asserts that at the time of the response in June, Respondent earned $21,000 in gross pay, that she owes $23,900 in total debt in Turkey and the United States including medical bills for A.H., and that her recurring living expenses total approximately $2,730 per month, and that Respondent has a total of $1,665 in her bank account. *Id.* at 8-9; *see also* ECF 14-2 (Declaration of Respondent). ECF 142 at 10. Respondent states that Petitioner's requested award would put Petitioner further in debt and strain on her ability to contribute to A.H.'s care. ECF 142 at 10. Considering the Court will grant an award significantly less than Petitioner's requested amount, the Court finds that Respondent's financial circumstances are insufficient to make Petitioner's remaining requested fees "clearly inappropriate" under § 9007(b)(3).

### 2. Good Faith Belief

Respondent also argues she acted in good faith when she brought A.H. to the United States, based on the parties' discussions of moving to the United States as a family. Respondent misses the point of the good faith analysis. Here, the focus is not on whether Respondent's actions were justified on the date she brought A.H. to the United States, but rather on whether she "had a good faith belief that her actions in ... *retaining* [A.H.] were legal or justified." *Rath*, 898 F.3d at 1311 (emphasis added). That is, "[t]he good faith belief standard in this context" relates to whether Respondent honestly believed that A.H.'s retention was lawful under the laws of the home country.

*Hart v. Anderson*, No. GJH-19-2601, 2021 WL 2826774, at *3-4 (D. Md. July 7, 2021) (quoting *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013)). Therefore, she has failed to make this showing.

## III. CONCLUSION

For the foregoing reasons, the Court find that it would not be clearly inappropriate to compel her to pay $9,201.74. Accordingly, the Court will award Petitioner's personal litigation expenses. Therefore, it is hereby

**ORDERED** that Petitioner's Motion (ECF 138) is GRANTED IN PART; it is further

**ORDERED** that Respondent is to pay Petitioner a total sum of $9,201.74.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
October 30, 2026